JS 44C/SDNY
REV. 4/2014

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS** John A. Olagues - Pro Se on behalf of Shareholders of JPMC

**DEFENDANTS** James Dimon

**ADDRESS, AND TELEPHONE NUMBER** John Olagues 413 Saure Rd., 504-875-4875

**ATTORNEYS (IF KNOWN)**

U.S. DISTRICT COURT FILED JUN 02 2014 S.D. OF N.Y.

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Suit Arises under Section 16(b) of the Securities Act 1934. Dimon puchased 500,000 shares of JPMC + Sold over 500,000 within 6 mts + profits $ 3 million

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No☒ Yes☐ Judge Previously Assigned

If yes, was this case Vol.☐ Invol.☐ Dismissed. No☐ Yes☐ If yes, give date _____ & Case No. _____

Is THIS AN INTERNATIONAL ARBITRATION CASE?   No ☒   Yes ☐

## NATURE OF SUIT

(PLACE AN [x] IN ONE BOX ONLY)

### TORTS

**CONTRACT**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 151 MEDICARE ACT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
- [✓] 160 STOCKHOLDERS SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY
- [ ] 362 PERSONAL INJURY - MED MALPRACTICE

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
- [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
- [ ] 446 AMERICANS WITH DISABILITIES -OTHER
- [ ] 448 EDUCATION

**PERSONAL INJURY**
- [ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
- [ ] 365 PERSONAL INJURY PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING

- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
- [ ] 463 ALIEN DETAINEE
- [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
- [ ] 530 HABEAS CORPUS
- [ ] 535 DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER

**PRISONER CIVIL RIGHTS**
- [ ] 550 CIVIL RIGHTS
- [ ] 555 PRISON CONDITION
- [ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT

### ACTIONS UNDER STATUTES

**FORFEITURE/PENALTY**
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 690 OTHER

**LABOR**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 740 RAILWAY LABOR ACT
- [ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA)
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL RET INC SECURITY ACT

**IMMIGRATION**
- [ ] 462 NATURALIZATION APPLICATION
- [ ] 465 OTHER IMMIGRATION ACTIONS

**BANKRUPTCY**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 COPYRIGHTS
- [ ] 830 PATENT
- [ ] 840 TRADEMARK

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 TAXES (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
- [ ] 375 FALSE CLAIMS
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 410 ANTITRUST
- [ ] 430 BANKS & BANKING
- [ ] 450 COMMERCE
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO)
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE

- [ ] 890 OTHER STATUTORY ACTIONS
- [ ] 891 AGRICULTURAL ACTS
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 896 ARBITRATION
- [ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES

Check if demanded in complaint:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____ OTHER_____

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE_____ DOCKET NUMBER_____

Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

(PLACE AN x IN ONE BOX ONLY)

**ORIGIN**

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
  - [ ] a. all parties represented
  - [ ] b. At least one party is pro se.
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from (Specify District)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judge Judgment

(PLACE AN x IN ONE BOX ONLY)   **BASIS OF JURISDICTION**   **IF DIVERSITY, INDICATE CITIZENSHIP BELOW.**

- [x] 1 U.S. PLAINTIFF
- [ ] 2 U.S. DEFENDANT
- [x] 3 FEDERAL QUESTION (U.S. NOT A PARTY)
- [ ] 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ]1 | [ ]1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ]3 | [ ]3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ]5 | [ ]5 |
| CITIZEN OF ANOTHER STATE | [ ]2 | [ ]2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ]4 | [ ]4 | FOREIGN NATION | [ ]6 | [ ]6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one: THIS ACTION SHOULD BE ASSIGNED TO: [ ] WHITE PLAINS   [x] MANHATTAN
(DO NOT check either box if this a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.)

DATE   SIGNATURE OF ATTORNEY OF RECORD   *John Alagun* (signature)   ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[ ] YES (DATE ADMITTED Mo. _____ Yr. _____ )
Attorney Bar Code #

RECEIPT #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

14 CV - 4872

# United States District Court
## Southern District of New York

John Olagues…

In proper person,
on behalf of the shareholders of J.P. Morgan Chase
413 Sauve Rd
River Ridge La 70123
olagues@gmail.com                                   Case #
504-875-4825                                        Judge….

v.

James Dimon, Chairman and CEO Director of J.P.Morgan Chase

**Suit to recover profits made by James Dimon CEO of J.P. Morgan Chase in violation of Section 16 b of the Securities Act of 1934**

**Jurisdiction:**

This suit arises under Section 16 b of the Securities Act of 1934 and is a private right of action on behalf of the shareholders of J. P. Morgan Chase. Olagues owns shares of J.P. Morgan Chase prior to the filing of this suit and has notified J.P. Morgan Chase of the 16 b) violation more than 60 days prior to the filing of this suit.

This court therefore has Subject Matter Jurisdiction. The Statue of Limitations does not expire until after July 20, 2014.

The Corporate Offices of J P Morgan Chase are located at 270 Park Ave. in New York, NY 10017-2014. Therefore this court has in personam Jurisdiction over Mr. James Dimon.

**Venue**

Defendant James Dimon operates out of his office in NY at 270 Park Ave and violated 16 b) while he was in New York.

**Relevant Law**

Section16 b of the Securities Act of 1934 penalizes any officers and directors of public companies if and when they are purchasers and sellers of equity securities of their employer/issuer and make a profit on the non-exempt purchases and non exempt sales within six months, *irrespective of any intention on the part of the officer or director.*

The profit is returnable to the shareholders. Any person who is a shareholder on the day of the suit has standing to sue for recovery of the profits on behalf of the shareholders made in violation of 16 b) by an officer or director.

**Profits from purchase and sale of security within six months**

Below is Section 16 b with the parts omitted that are irrelevant.

*For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security)......... involving any such equity security within any period of less than six months, ......shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same*

*thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.*

For the purposes of this suit against James Dimon, Section 16 b) means, in addition to other matters, that if an officer of a public issuer of stock, purchases equity securities of the employer/issuer and sells equity securities of the employer/issuer within six months, any profits from the purchase and sale must be returned to the company, JPMC, unless the SEC by rules and regulations may exempt either the purchase or sale as not comprehended within the purpose of the subsection mentioned above.

**Below are the transactions and events that are relevant to this suit.**

1. A grant of 462,000 Employee Stock Options to James Dimon, CEO of J.P. Morgan with an exercise price of $31.22 on July 1, 2004, expiring April 16, 2012 which was a "purchase" but the grant was **probably exempt** from Section 16 b pursuant to SEC Rule 16 b-3.

2. An exercise or conversion (vesting) of 97,852 Restricted Stock Units on January 13, 2012 with an alleged transfer to J.P. Morgan Chase of 46,481 shares for an alleged tax liability of Dimon to be paid by J.P. Morgan Chase in cash to the IRS. There is no indication from SEC Form 4 filings or from the Plan Documents that the exercise was a transaction required by plan documents or the subsequent alleged transfer to the issuer was required by the plan documents.

3. Creation of a 10 b-5-1 plan on Feb 15, 2012 by Dimon, where the above mentioned 462,000 Employee Stock Options were exercised according to a footnote of a Form 4, filing. The sole purpose of creating a 10 b-5-1 plan is to sell or purchase shares in the market, and to do so with an affirmative defense against possible allegations of violation of

Rule 10 b-5-1. The purpose of the creation and use of a 10 b-5-1 plan is never to exercise Employee Stock Options without selling the stock received. It is impossible for the exercise of ESOs alone to create a violation 10 b-5-1. It never has and never will.

Dimon created the 10 b-5-1 plan for the purpose of selling shares to the market, received from the exercise of the 462,000 Employee Stock Options or from vesting Restricted Stock or the exercise or conversion of Restricted Stock Units or other shares that he owns.

4. An exercise of 462,000 Employee Stock Options by Dimon on 3/2/2012 inside of the 10 b 5-1 plan was mentioned in a footnote to the filing of the Form 4. After substantial research, I was not able to find another 10 b-5 -1 plan that was ever created by someone else for the sole purpose of exercising Employee Stock Options without a subsequent sale of the received stock to the market.

5. A sale of 409,167 shares, allegedly from Dimon to J.P. Morgan Chase on 3/2/2012 was made to the market. These shares were part of those received from the exercise of the 462,000 employee stock options. The transaction was described as a "F" Transaction on the SEC Form 4 filings in order to pay the exercise price and to pay Dimon's alleged tax liability incurred when the 462,000 Employee Stock Options were exercised. There was no tax liability that was incurred upon the exercise of the 462,000 Employee stock options, pursuant to IRC 83(c)(3). The alleged transfer of 409,167 shares to JPMC also was claimed to be used to pay the exercise price of the 462,000 Employee Stock Options when the exercise occurred. In all probability, JPMC sold sufficient shares to the market simultaneous with Dimon's alleged transfer of shares to JPMC. That sale to the market by JPMC, negated any possible exemption pursuant to Rule 16b-3 for Mr. Dimon.

6. Purchases of 500,000 shares in the market by Dimon (not from the issuer) that was **not exempt** from Section 16 b) on July 19, and 20, 2012.

PAGE 4 OF 9

7. On January 13, 2013, the vesting of 97,852 rights to receive stock and the vesting of 125,707 Restricted Stock Units was allegedly followed by a transaction described as "F" in the SEC Form 4 filings. The alleged "F" transaction means a "Payment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise or vesting of a security issued in accordance with Rule 16b-3" of 121,648 shares to JPMC to pay taxes for which he was not liable pursuant to IRC 83(c)(3) at the time of vesting.

If JPMC sold sufficient shares to the market simultaneous with Dimon's alleged transfer of shares to JPMC, that sale to the market by JPMC, negated the possible exemption pursuant to Rule 16b-3 for Mr. Dimon.

---

The purchase of the 500,000 shares on July 19, 20, 2012 were not exempt from 16 b).

The sales of the 409,167 shares on March 2, 2002 were not exempt from 16 b).

The sales of 121,648 shares on January 13, 2003 were not exempt from 16 b).

---

The exercise of 462,000 Employee Stock Options on March 2, 2012 and the receipt of the 462,000 shares was followed by "sale" of 409,167 of the total shares received on March 2, 2012. In the description on the filing of the Form 4, Mr. Anthony Horan, Corporate Secretary of J.P. Morgan claimed that the "sales" were dispositions to the Issuer and were done in such a manner to achieve an exemption from Section 16 b of the 1934 Act pursuant to Rule 16 b-3. Mr Dimon will probably claim that the transaction on March 2, 2012 was delivery of stock to J.P. Morgan Chase to pay his tax liabilities and to pay for the exercise price of the 462,000 Employee Stock Options and therefore he will claim the "sale" was exempt under 16 b-3(e) of the SEC rules.

PAGE 5 OF 9

Mr Dimon will probably claim that the transaction on January 13, 20013 after the vesting, exercise and conversion of Restricted Stock and Restricted Stock Units was a delivery of 121,648 shares of stock to J.P.Morgan Chase that was required to pay the tax liabilities of Dimon incurred by the vesting of rights to receive stock and restricted stock units and therefore the transfer is exempt under 16 b-3(e) of the SEC rules.

It will be shown that his alleged liability for taxes accrued upon the vesting, exercise or conversion is in error. In this case, Mr Dimon had no tax liability until 6 months after vesting of the RS and RSUs.

It is agreed that he purchase of 500,000 shares in the market on July 19, 20, 2012 was not exempt from 16 b.

It is undisputed that the "sale" transactions on March 2, 2012 was within 6 months of the purchase of stock on July 19 and 20, 2012.

It is undisputed that the "sales" transactions on January 13, 2013 were within 6 months of the purchase of stock on July 19 and 20, 2012.

---

Olagues claims that it can be demonstrated and he will demonstrate that the 409,167 shares were sold in a non-exempt market transaction on March 2, 2012 and the cash proceeds were transferred to J.P. Morgan Chase for the exercise price and the assumed tax liability. This is especially true because the 10 b-5 -1 plan was set up specifically for selling the 409,167 shares and possibly other shares to the market .

It can also be shown that there was no tax liability to Dimon incurred when the 462,000 ESOs were exercised pursuant to IRC 83-c-3 and the tax liability was deferred until September 2, 2002. Therefore there could be no requirement to transfer the shares for such a tax payment for a tax liability which did not exist.

It will also be shown that the "sale" of the 409,167 shares was not

approved with the required specificity by a proper committee to achieve an exemption from 16 b via SEC Rule 16 b-3(e).

It will also be shown that there was no tax liability to Dimon when the Restricted stock rights and the RSUs vested on Jan,13, 2013 pursuant to IRC 83-c-3. The liability was deferred until July 13, 2003 if indeed the shares were transferred to J.P.Morgan Chase for alleged tax liabilities.

It will also be shown that the alleged transfers of stock to J. P. Morgan Chase were not and could not have been approved by a proper committee in accordance with 16 b-3 (1) or (2) in advance of the alleged transfers of stock to J .P. Morgan Chase.

It can also be shown that the transfers of stock, if there were transfers of stock to JPMC, were non-exempt Discretionary Transactions as Defined in Rule 16 b-3-b) and 16 b-3-f) and were not exempt from 16 b.

---

If the shares were transferred to the issuer for non existent tax liabilities, those transfers (i.e. "sales") were not exempt from 16 b), because no proper committee would approve such a transfer.

If the transfers were Discretionary Transactions by Dimon, these transfers were not exempt from 16 b).

**"Sales" were not exempt from 16 b**

So unless Mr. Dimon or his attorney can prove all of A - F below, the alleged transfers to JPMC were not exempted by SEC Rule 16 b-3(e) and were matched against the non exempt purchase of 500,000 on July 19, 20 2002.

A. The alleged transfers of shares to J.P. Morgan Chase were required by the Plan documents and were not at the discretion of the issuer or of

Dimon.

B. The shares were transferred for the purposes described in "F" of the Transactions Code in the SEC Form 4 filings and

C. The tax liabilities, for which shares were alleged transferred to JPMC for payment,of taxes were actual tax liabilities on the moment of exercise or vesting when IRC 83-c-3 was considered.

D. The transaction terms and details were approved with the required specificity in advance by a proper Compensation committee and

E. The transactions were not at the volition of Mr. Dimon and

F. That Dimon's creation of a 10 b-5-1 plan was for the sole purposes of exercising Employee Stock Options and not for the purpose of selling the stock received from the exercise or vesting or RSUs in the market.

---

It is also the case that the dispositions of the shares to the issuer were not and could not have been approved prior to the alleged disposition to the issuer.

Highlighted below is a part of the 2005 JPMC Long Term Incentive plan under Stock Options.

**(d) The option exercise price of each share of Common Stock as to which a stock option is exercised shall be paid in full at the time of such exercise. The method and form of such payment shall be determined by the Committee from time to time.**

Below is a section of an SEC question and answer session which is relevant to understanding why there was no approval of the terms of the disposition by a proper board of directors committee and therefore the alleged dispositions to the issuer are not exempt from 16 b) pursuant to SEC Rule 16 b-3(e).

PAGE 8 OF 9

**Exchange Act Section 16 and Related Rules and Forms**

Last Update: August 11, 2010

**QUESTIONS AND ANSWERS OF GENERAL APPLICABILITY**
Section 101. Section 16 – General Guidance

**Question:** <u>Would approval of a grant that by its terms provides for automatic reloads satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants?</u>

**Answer:** <u>Yes. Approval of a grant that by its terms provides for automatic reloads would satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants, unless the automatic reload feature permitted the reload grants to be withheld by the issuer on a discretionary basis.</u> **The same result applies under Rule 16b-3(e) where the automatic feature is a tax- or exercise-withholding right. [May 23, 2007]**

The emphasis above are Petitioner's. And since the decision to accept cash or shares for the alleged exercise price and tax liability is discretionary pursuant to the JPMC 2005 Plan, it is certain that the terms were not approved prior to the "sale" with the necessary specificity.

Therefore Mr Dimon owes to the J. P. Morgan Chase shareholders whatever profits he made (approximately $3.5 million) on the non-exempt purchases of 500,000 shares and non exempt "sales" of the stock within 6 months.

Respectfully Submitted

John Olagues

PAGE 9 OF 9