UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
JOHN OLAGUES,                              )
                                           )
                    Plaintiff,             )
          v.                               )    No. 14-CV-4872 (GHW)
                                           )
JAMES DIMON and                            )
JPMORGAN CHASE & CO.,                      )
                                           )
                    Defendants.            )
                                           )
---------------------------------------------------------x


**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**


                                                    Sharon L. Nelles
                                                    Andrew J. Finn
                                                    SULLIVAN & CROMWELL LLP
                                                    125 Broad Street
                                                    New York, New York  10004
                                                    Telephone:  (212) 558-4000
                                                    Facsimile:  (212) 558-3588
                                                    nelless@sullcrom.com

                                                    *Attorneys for Defendants James*
                                                    *Dimon and JPMorgan Chase & Co.*


December 5, 2014

Plaintiff's opposition to defendants' motion to dismiss ignores two fundamental and fatal flaws in his amended complaint. First, plaintiff has failed to address his failure to plead adequately, and inability to plausibly establish, that James Dimon made any non-exempt "sales" of JPMorgan Chase & Co. ("JPMC") common stock that were subject to Section 16(b) of the Securities Exchange Act of 1934. Plaintiff does not dispute that the two dispositions of JPMC shares about which he complains—the March 2012 Disposition and the January 2013 Disposition—were carried out as part of routine equity compensation transactions with JPMC.[1] Those transactions, like virtually all compensation-related transactions in equity securities between a director or officer and the issuer, were *designed* to be exempt transactions under Section 16(b). And the SEC Form 4 filings on which the amended complaint relies expressly identify the transactions at issue as exempt under SEC Rule 16b-3, which they are. Indeed, plaintiff has abandoned any allegation that the January 2013 Disposition constituted a non-exempt sale. (Pl's Opp'n at 1 & 3 n.1, Dkt. No. 28.)

Instead, plaintiff's opposition focuses solely on the March 2012 Disposition. Plaintiff argues that his complaint should survive because he posits for the first time in his opposition brief that the disposition may not have been "approved in advance" by JPMC. (Pl's Opp'n at 14.) But the amended complaint makes no mention of any failure by JPMC to "approve" transactions—and plaintiff cannot add this allegation now as a third bite at the apple. Further, plaintiff's speculation that the March 2012 Disposition may not have been approved in advance is not only too late, but also far-fetched and wholly unsupported.

---

[1] Unless otherwise noted, capitalized terms in this reply memorandum have the same meaning as defined in defendants' November 10, 2014 Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. No. 25.)

In addition, plaintiff has no good answer for his failure to make a valid demand on the Board of Directors of JPMC prior to commencing this lawsuit—a statutory pre-condition for a shareholder to commence a lawsuit under Section 16(b).  Accordingly, the amended complaint should be dismissed.

## I. Plaintiff Has Abandoned Any Section 16(b) Claim Arising from the January 2013 Disposition.

In response to defendants' motion to dismiss the amended complaint, plaintiff does not argue that the January 2013 Disposition is a non-exempt "sale" under Section 16(b).  Rather, plaintiff concedes that "[b]ased on specific approvals that Defendants provided with their motion to dismiss . . . it appears that Mr. Dimon's sale of JPMC Common Stock to JPMC on January 12, 2013 . . . may qualify for the Rule 16b-3(e) exemption."  (Pl's Opp'n at 3 n.1.)  In other words, plaintiff concedes that he has no basis to bring a complaint with respect to this disposition.  As plaintiff recognizes, the terms and conditions of the RSU Awards were approved in advance by the JPMC Board and mandated that JPMC "retain from each distribution the number of shares of Common Stock required to satisfy applicable tax obligations."  (Pl's Opp'n at 11.)  Such transactions are exempt under Rule 16b-3(e), and the January 2013 Disposition was so designated on a Form 4.  (Finn Decl. Ex. K, Dkt. No. 26.)  Because plaintiff has not opposed defendants' motion with respect to the January 2013 Disposition, any purported Section 16(b) claim arising from that disposition must be deemed abandoned and dismissed accordingly. *Anwar* v. *Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 420, 443 (S.D.N.Y. 2010) (granting dismissal where plaintiffs failed to respond to claims in their opposition papers) (citing *Burchette* v. *Abercrombie & Fitch Stores, Inc.*, No. 08-CV-8786, 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (certain claims asserted in complaint "deemed abandoned and dismissed '[b]ecause

Plaintiff did not address [Defendants'] motion to dismiss with regard to these claims'") (citations omitted)).

## II. Plaintiff's "Opposition" That the March 2012 Disposition May Not Have Been Approved by Bank One or JPMC Is Not Sufficient to Sustain the Amended Complaint.

Like the January 2013 Disposition, the March 2012 Disposition was designated as an exempt transaction on a Form 4 filing as a "[p]ayment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise or vesting of a security issued in accordance with Rule 16b-3."[2] (Finn Decl. Ex. G; Ex. A (Form 4 Instructions) at 6.) In his opposition, plaintiff does not point to any allegation in his amended complaint for disputing this designation. Instead, plaintiff focuses on Rule 16b-3's requirement that dispositions by a corporate insider to the issuer be approved in advance by the issuer's board, a committee of the board, or shareholders. 17 C.F.R. § 240.16b-3(d). Plaintiff now suggests—for the first time— that approval of the March 2012 Disposition may not have been "sufficient." (Pl's Opp'n at 8-14.) The amended complaint contains no such allegation, which alone is fatal to plaintiff's argument that the March 2012 Disposition may not have qualified for an exemption under Rule 16b-3(e). *Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting allegation that "does not appear anywhere in the amended complaint and did not enter the case until [plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss"

---

[2]   Plaintiff's contention that "[c]ourts have accepted the truth of the contents" of Form 4 filings on a motion to dismiss only "to show stock purchases and sales" without consideration of transaction codes in those filings is wrong. (*See* Pl's Opp'n at 7.) Not only does the decision on which plaintiff relies say nothing of the sort, *In re Bear Stearns Companies, Inc. Sec., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 583-84 (S.D.N.Y. 2011) ("courts may use information from SEC filings regarding a defendant's stock sales to determine whether such sales were 'unusual' or 'suspicious'") (citation omitted), but also purchases and sales of stock are designated exclusively through the use of transaction codes. (*See* Finn Decl. Ex. A (Form 4 Instructions) at 5-6.)

-3-

(citations omitted)); *see also Fadem* v. *Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues solely in their briefs."), *aff'd*, 157 F. App'x 398 (2d Cir. 2005); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001) ("The complaint cannot, of course, be amended by the briefs in opposition to a motion to dismiss.").

Moreover, even if plaintiff could amend the complaint a second time through his opposition brief—he cannot—he has set forth no factual basis for an allegation that the March 2012 Disposition was a non-exempt transaction. To the contrary, the information available to plaintiff is that a Form 4 filing designated that transaction as exempt. To assert any claim, plaintiff would need both a factual basis to allege that the transaction was not exempt, and a particularized factual basis—that satisfies the stringent pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure—to allege that representations made in the Form 4 were false. *Roth* v. *Reyes*, 06-CV-02786, 2007 WL 518621, at *8 n.2 (N.D. Cal. Feb. 13, 2007) ("In cases such as this one, where the Plaintiff's theory of liability hinges on alleged misrepresentations by the insiders in their Section 16(a) disclosures, . . . the more rigorous standard of Rule 9 applies." (citations omitted)). Rule 9(b) "require[s] that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach* v. *Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Plaintiff's mere supposition that the March 2012 Disposition may not have been approved does not rise to the level of particularity that Rule 9(b) requires.

Indeed, SEC filings, of which plaintiff does not dispute the Court may take notice, contradict any contention that the March 2012 Disposition was not approved in advance. (Pl's

-4-

Opp'n at 7, 11 n.3.)  Specifically, those filings demonstrate that (1) Bank One's Organization, Compensation and Nominating Committee recommended, and Bank One's Board of Directors approved, the grant of the 2002 Options to Mr. Dimon pursuant to the Bank One Plan (Finn Decl. Ex. B at 13-14); (2) the Bank One Plan required that any options awarded have a fixed exercise price, and it specified methods for payment of that price in the event that the options were exercised, including "through the delivery or deemed delivery based on attestation to the ownership of shares of Common Stock."[3] (Ex. C at §§ 6(a) & 8(e)); (3) JPMC's Board and shareholders approved the 2004 merger with Bank One, pursuant to which "each outstanding option to purchase shares of Bank One Common Stock . . . issued pursuant to any Bank One Stock Plan . . . shall be assumed by [JPMC] . . . . *on the same terms and conditions as were applicable under such Bank One Stock Option*" except for a merger-adjusted price and number of shares (Finn Decl. Ex. E at § 5.8(a) & (c) (emphasis added));[4] and (4) nothing in JPMC's 2005 Incentive Plan to which plaintiff points purports to alter the methods that Bank One approved for payment of the exercise price for the 2002 Options (Pl's Opp'n at 10-12).

Because plaintiff has not pleaded any factual allegations "to raise a right to relief above the speculative level," *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citation omitted), there is no basis "to proceed to discovery," as plaintiff requests, in the hope—contrary to the Form 4 and SEC filings set forth above—that something will be found showing that some

---

[3] The proxy statement disclosing Bank One's grant of the 2002 Options states that those options authorized Mr. Dimon to "pay[] all or a part of the exercise price of a stock option with shares of common stock held by the participant for at least six months"—*i.e.*, delivery of JPMC shares to JPMC.  (Finn Decl. Ex. B at 17 n.2.)  Plaintiff does not dispute that the Bank One Plan also required that tax withholdings be paid either in cash or by withholding of shares.  (Pl's Opp'n at 9.)

[4] The merger agreement also stated that "[i]f necessary, JPMorgan Chase shall comply with the terms of the applicable Bank One Stock Plan."  (Finn Decl. Ex. E at § 5.8(c).)

-5-

part of the March 2012 Disposition was somehow not authorized.[5] (Pl's Opp'n at 10 n.2.) The amended complaint should be dismissed.

### III. Plaintiff's Opposition Does Not Establish That His "Demand" to JPMC Was Sufficient.

Separately, the amended complaint fails because plaintiff has not alleged, and cannot allege, that an adequate demand was made to JPMC's Board of Directors prior to commencing this lawsuit. Plaintiff agrees that he was required under Section 16(b) to make a demand, and that any demand had to "be sufficiently specific to enable the board to perform its duty to make a good faith investigation of claims of alleged wrongdoing and to rectify the misconduct at issue in a subsequent lawsuit." (Pl's Opp'n at 18-19 (citation, internal quotation marks and alterations omitted).) Plaintiff contends that his letters to Mr. Dimon and JPMC's Corporate Secretary of February 13 and 21, 2014 (Finn Decl. Exs. O & P) constituted an adequate demand because "[p]laintiff and JPMC had a common understanding of the identity of the alleged wrongdoer, the identity of the transactions at issue (including an estimate of short-swing profits), and the remedy that [p]laintiff sought under Section 16(b)." (Pl's Opp'n at 19-20.) The amended complaint, however, contains no such allegations concerning plaintiff's purported demand. (Am. Compl. ¶¶ 19-20, Dkt. No. 24 (alleging only that "Plaintiff notified

---

[5] By suggesting that defendants should "come forward with [ ] documentation showing that the Bank One Committee specifically authorized payments by employees generally or by Mr. Dimon for the exercise of stock options through the delivery of shares back to the issuer" (Pl's Opp'n at 9-10), plaintiff attempts to improperly shift his burden to plead a plausible claim under Section 16(b). *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 550 (S.D.N.Y. 2014) ("To state a claim for disgorgement of short-swing profits under Section 16(b), a plaintiff must allege [ ] *a non-exempt* purchase and subsequent *non-exempt* sale (or a non-exempt sale and subsequent non-exempt purchase)" and "allege sufficient facts to nudge its claims across the line from conceivable to plausible" (emphasis added, and alterations and citations omitted)). The terms and conditions for the 2002 Options award to Mr. Dimon authorized delivery of shares as a method for payment of the exercise price. Those terms and conditions have not been submitted because they have not been publicly filed and are not necessary for the Court to sustain the instant motion. They are available at the Court's request.

JPM[C] of the facts alleged above more than sixty days prior to filing the initial Complaint" and JPMC "failed to recover the profits alleged herein or institute a lawsuit to recover those profits.") Plaintiff's added assertions in his opposition brief cannot remedy plaintiff's failure to plead all the elements of a proper demand in the amended complaint. *See Wright*, 152 F.3d at 178.  In any event, plaintiff ignores at least two fatal deficiencies in his purported "demand":

*First*, plaintiff provides no excuse for his having demanded an improper personal windfall of hundreds of thousands of dollars from Mr. Dimon in exchange for not bringing this lawsuit (nor his subsequent requests to obtain a personal "settlement"). (Finn Decl. Exs. O & T.) Section 16(b) does not permit personal recovery by a shareholder, even where a claim for disgorgement of short-swing profits is meritorious. *Klein ex rel. SICOR, Inc.* v. *Salvi*, No. 02-CV-1862, 2004 WL 596109, at *1 (S.D.N.Y. Mar. 30, 2004), *aff'd sub nom.*, *Klein* v. *Salvi*, 115 F. App'x 515 (2d Cir. 2004). Indeed, allowing a putative Section 16(b) plaintiff to demand a personal payout from an issuer's board of directors would vitiate a primary purpose of the demand requirement—to provide a safeguard against efforts to threaten an unfounded lawsuit in order to obtain personal gain.  *Simmonds* v. *Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1089 (9th Cir. 2010) ("The Delaware Supreme Court has explained that the demand requirement exists 'first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits.'" (citation omitted)).  Plaintiff's demand for money for himself, rather than shareholders, alone renders his purported "demand" insufficient as a matter of law.

*Second*, plaintiff did not direct any of his letters to JPMC's Board of Directors, as Delaware law and federal rules require.  Courts have long required that a "demand . . . be directed to the board as a whole, and not merely to the board's chairman, the corporate officers, or the majority shareholder."  *Equitec-Cole Roesler LLC* v. *McClanahan*, 251 F. Supp. 2d 1347,

1353 (S.D. Tex. 2003) (citations omitted); *Recchion ex rel. Westinghouse Elec. Corp.* v. *Kirby*, 637 F. Supp. 1309, 1319 (W.D. Pa. 1986) (demand inadequate where it was not addressed to the entire board); *Chrystall* v. *Serden Techs.*, 913 F. Supp. 2d 1341, 1351 (S.D. Fla. 2012) (demand on president and general counsel does not satisfy Delaware's demand requirement); *Kaster* v. *Modification Sys., Inc.*, 731 F.2d 1014, 1017 (2d Cir. 1984) (demand on president and chairman of the board inadequate); *Greenspun* v. *Del E. Webb Corp.*, 634 F.2d 1204, 1209 (9th Cir. 1980) (demand on president/director and general counsel insufficient); *Shlensky* v. *Dorsey*, 574 F.2d 131, 140-41 (3rd Cir. 1978) (demand on president insufficient).  This requirement derives from another primary purpose of the demand requirement:  to "enable *the board* to perform its duty to make a good faith investigation." *Simmonds*, 638 F.3d at 1090 (emphasis added).  Plaintiff's "demand" letters to Mr. Dimon and JPMC's Corporate Secretary are insufficient as a matter of law. *Kaster*, 731 F.2d at 1017.

        Moreover, plaintiff's new argument that JPMC "demonstrated that it understood" plaintiff's "intentions" to make a Section 16(b) demand through response letters from JPMC's Corporate Secretary is beside the point.  (Pl's Opp'n at 19.)  "Delaware case law sets forth an objective standard for assessing the adequacy of a demand and does not inquire whether the board of directors had independent knowledge of relevant information." *Simmonds*, 638 F.3d at 1093 ("We are not persuaded by Simmonds's argument that the [ ] Issuers subjectively understood what she meant in her demand letters.").  Because plaintiff has not met the objective standard that a demand be directed at the board and "specifically state (i) the identity of the wrongdoer [ ], (ii) the wrongdoing [ ] allegedly perpetrated and the resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to take," plaintiff lacks standing to bring any claim under Section 16(b). *Id.* at 1088, 1090 ("[T]he party asserting that a

demand was made . . . bear[s] the burden of proof.") (quoting *Yaw* v. *Talley*, No. CIV-A-12882, 1994 WL 89019, at *7 (Del. Ch. Mar. 2, 1994)).

## CONCLUSION

For the foregoing reasons and those set forth in defendants' November 10, 2014 memorandum, the amended complaint should be dismissed with prejudice in its entirety.

Dated: December 5, 2014
      New York, New York

/s/ Sharon L. Nelles

Sharon L. Nelles
Andrew J. Finn
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
nelless@sullcrom.com

*Attorneys for Defendants James Dimon and JPMorgan Chase & Co.*